# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| MIG, LLC and ITC Cellular, LLC | : | Case No. 14-11605(KG) |
| | : | (Jointly Administered) |
| Debtors. | : | |
| | : | |
| MIG, LLC and ITC Cellular, LLC, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Adv. Proc. No. 15-51115(KG) |
| | : | |
| SHENTON PARK COMPANY, INC., | : | |
| | : | |
| Defendant. | : | **Re: Dkt. Nos. 68 and 75** |

## MEMORANDUM OPINION

The Court is tasked with opining on foreign law, the Partnership Act, 1996, (the "Partnership Act") of the British Virgin Islands ("BVI"), and specifically the BVI law on limited partnerships[1]. The Court's decision will have important consequences for the present bankruptcy case. Fed. R. Civ. P. 44.1 provides, in part, that:

> In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination must be treated as a ruling on a question of law.

---

[1] The Debtors and Shenton Park Company, Inc. ("Shenton Park") have agreed that "the only disputed issue remaining before the Court at this time is whether or not a change of control occurred pursuant to Section 8.1 of the Second Amended and Restated Limited Liability Company Agreement of International TelCell Cellular, LLC . . . as a result of the expiration of the fixed term of the CaucusCom Ventures L.P. partnership . . . . Stipulation Regarding Issues Remaining (D.I. 68, Ex. A).

The Court had the benefit of explanation by two excellent and knowledgeable experts whose presentations the Court will discuss below. Before the Court ventures further, it will be helpful to discuss the entities' relationship. The parties have agreed to the following facts which include the relationships:

## STIPULATED STATEMENT OF FACTS

1. Debtor MIG is a limited liability company organized under the laws of the State of Delaware. MIG owns 100% of the membership interests in Debtor ITC Cellular, a Delaware limited liability company. ITC Cellular in turn owns 46% of the membership interests of non-debtor International Telcell Cellular, LLC ("**International Telcell**"). International Telcell, directly and indirectly through its wholly owned non-debtor subsidiary, Telcell Wireless, LLC, owns all the issued and outstanding equity interests of non-debtor Magticom Ltd. ("**Magticom**"), the leading mobile telephone company in the Republic of Georgia. The remaining ownership stake of International Telcell is held 51% by Dr. George Jokhtaberidze ("**Dr. Jokhtaberidze**"), a Georgian national who founded Magticom, and 3% by Gemstone Management Ltd., an entity formed by certain former management of Magticom. The Debtors' organizational chart is attached as **Hearing Exhibit 1**.

2. Formerly known as MIG, Inc., MIG was a debtor in a previous case captioned *In re MIG, Inc.*, No. 09-12118 (KG) (Bankr. D. Del.) (the "**2009 Chapter 11 Case**"). On November 19, 2010, the Court confirmed the *Modified Joint Second Amended Plan of Reorganization for MIG* (the "**Joint Plan**") [No. 09-12118, Docket No. 1209]. The effective date of the Joint Plan was December 31, 2010. Pursuant to the Joint Plan, MIG was converted to a Delaware limited liability company. The 2009 Chapter 11 Case was closed on July 27, 2011 [No. 09-12118, Docket No. 1501].

3. Under the Joint Plan, MIG issued Senior Secured Cash/PIK Notes Due 2016 (the "**Notes**") for the benefit of certain holders (the "**Noteholders**"), pursuant to an Indenture, dated as of December 31, 2010, among MIG, as Issuer, ITC Cellular, as Co-Obligor, and The Bank of New York Mellon, as Trustee, Collateral Agent, Registrar, Paying Agent, and Note Accounts Bank.

4. CaucusCom Ventures L.P. ("**CaucusCom**") owns 100% of the membership interests in MIG. CaucusCom has no other assets other than its membership interests in MIG. A copy of CaucusCom's organizational chart is attached as **Hearing Exhibit 2**.

5.  Caucus Carry Management LP ("**Caucus Carry**") is and remains the general partner of CaucusCom. Caucus Telecom Management Ltd. ("**Caucus Telecom**") is the general partner of Caucus Carry, formed pursuant to a joint venture agreement between Yola Investments S.a.r.l. ("**Yola**") and Gtel L.P. ("**Gtel**").

6.  Yola, Gtel, and Shenton Park are the three limited partners of CaucusCom (the "**CaucusCom Limited Partners**"). Yola is a Luxembourg investment group formed by the UK private equity group Sun Capital Partners Ltd. Gtel is a BVI investment group formed by Salford Capital Partners, Inc. ("**Salford**").

7.  Shenton Park is a BVI company owned by a trust formed by the late Georgian billionaire Badri Patarkashvilli.

8.  The Debtors' rights with respect to their indirect interest in Magticom are governed by the Purchase and Sale Agreement between ITC Cellular and Dr. Jokhtaberidze, dated January 15, 2009 (the "**PSA**") and the Second Amended and Restated Limited Liability Company Agreement of International Telcell Cellular, LLC, dated January 15, 2009 (the "**International Telcell LLC Agreement**"). Copies of the PSA and the International Telcell LLC Agreement are attached as **Hearing Exhibits 3 and 4**, respectively.

9.  As part of the International Telcell LLC Agreement, both the Debtors and Dr. Jokhtaberidze are bound by non-alienation and change of control provisions regarding their interests in Magticom, as specifically enumerated in the PSA and International Telcell LLC Agreement. These provisions, as they relate to the Debtors, are triggered by the occurrence of certain events with respect to certain entities in MIG's and ITC Cellular's ownership chain (an "**ITC Cellular Change of Control**").

10. Specifically, pursuant to Section 8.1 of the International Telcell LLC Agreement and Article 1 of the PSA, an ITC Cellular Change of Control occurs upon the occurrence of the following events:

(a)  CaucusCom ceasing to beneficially own in the aggregate, directly or indirectly at least 46% of the Equity Securities of the Company;

(b)  Caucus Carry ceasing to be the general partner of CaucusCom;

(c)  Yola and Gtel ceasing to hold 100% of limited partner interests in Caucus Carry;

(d)  Caucus Telecom ceasing to be the general partner of Caucus Carry;

(e) Yola and Gtel ceasing to hold 100% of the Equity Securities of Caucus Telecom;

(f) Yola and Gtel ceasing to hold at least 35% of the limited partnership interests in CaucusCom;

(g) Yola and Gtel (acting jointly through their direct and indirect Subsidiaries) ceasing to direct or cause direction (i) of management and policies of ITC Cellular or (ii) of the exercise and performance of ITC Cellular's rights and obligations under the International Telcell LLC Agreement; and

(h) any Change of Control of Yola, Gtel, Caucus Telecom, Caucus Carry or CaucusCom.

11. Pursuant to its formation documents, the CaucusCom partnership was set to expire on August 15, 2011, with an ability of the general partner to unilaterally extend the term for up to two years. CaucusCom's general partner, Caucus Carry, exercised its right to extend the partnership to August 15, 2013. A copy of the CaucusCom Articles of Limited Partnership is attached as **Hearing Exhibit 5**.

12. Under the terms of the CaucusCom partnership agreement, the consent of each of the CaucusCom Limited Partners – Yola, Gtel, and Shenton Park – was required to extend the partnership after August 15, 2013.

13. The CaucusCom Limited Partners unanimously elected to extend the termination of CaucusCom until April 15, 2014 and proceeded as if there had been no interruption to the partnership.

14. On April 24, 2014, MIG learned that Shenton Park had not agreed to extend the CaucusCom partnership past the April 15, 2014 expiration. Thus, the term of the CaucusCom partnership again expired on April 15, 2014.

15. Since the April 15, 2014 expiration of the term of the CaucusCom partnership, the general partner has not sought the appointment of a liquidator. On June 19, 2015, Shenton Park filed the Application for Winding Up and Appointment of Liquidator in the British Virgin Islands, Case Number BVIHCM 2015/0075, which seeks the winding up and appointment of a liquidator over CaucusCom.

The dispute at hand involves CaucusCom, and whether it dissolved upon the expiration of its term on April 15, 2014. It becomes important because a CaucusCom dissolution results in an ITC Cellular change of control which will affect the bankruptcy.

4

With the facts in hand, the dispute becomes a legal question and again the parties have defined the issue, as follows:

ACCORDINGLY, the Parties hereby stipulate and agree as follows:

1. The only disputed issue remaining before the Court at this time is whether a change of control (an "**ITC Cellular Change of Control**") occurred under Section 8.1 of the Second Amended and Restated Limited Liability Company Agreement of International Telcell Cellular, LLC, dated January 15, 2009, as a result of the expiration of the fixed term of the CaucusCom Ventures L.P. partnership on April 15, 2014.

2. In the event that the Court finds that an ITC Cellular Change of Control <u>has not occurred</u>: (a) Shenton Park shall stay the Application for Winding Up and Appointment of Liquidator filed by Shenton Park in the British Virgin Islands, Case Number BVIHCM 2015/0075 (the "**BVI Application**") unless and until an ITC Cellular Change of Control occurs independently of actions taken by Shenton Park or until the earlier of confirmation of a plan in either of the pending Chapter 11 cases, dismissal of either case, or conversion of either case to Chapter 7 and (b) the Debtors and the Indenture Trustee shall not pursue a claim for damages against Shenton Park relating to or arising from the BVI Application, but all other claims for damages are expressly reserved.

3. In the event that the Court finds that an ITC Cellular Change of Control <u>has occurred</u>: (a) the Debtors and the Indenture Trustee shall not interfere with the BVI Application or seek any damages as a result thereof, and (b) Shenton Park shall not pursue a claim for damages against the Debtors and/or the Indenture Trustee for seeking to enjoin the BVI Application, but all other claims for damages are expressly reserved.

4. The Parties reserve the right to appeal from the Court's ruling on the ITC Cellular Change of Control dispute and to seek any appropriate stay pending such appeal.

## DISCUSSION

### A.    The Issue

The Debtors are rightly concerned with an ITC Cellular change of control. They cite to the limitation on their ability to share in the governance of Magticom, a dividend

support covenant and an IPO support covenant. These are critical to Debtors' reorganization efforts, according to Debtors themselves.

The fixed term of the CaucusCom partnership expired on April 15, 2014, after extension. The original fixed term of CaucusCom was June 21, 2011, which pursuant to Section 10.1.1 of CaucusCom's Articles of Limited Partnership (the "Articles"), Caucus Carry could extend for two years. Caucus Carry elected to make the two year extension and the limited partners then agreed to extend to the April 15, 2014 date. If the Court finds that CaucusCom dissolved on April 15, 2014, it would trigger a change of control of ITC Cellular. The change of control is governed by ITC Cellular's Second Amended and Restated Limited Liability Company Agreement (the "ITC Cellular LLC Agreement"). The lengthy agreement provides, in minor but important part, that "ITC Cellular Change of Control" means the occurrence of any event that, for any reason, results in the following:

\* \* \*

> (viii) any change of control of Yola, Gtel, Caucus Telecom, Caucus Carry or CaucusCom ventures. For the purposes of this definition, "Control" means, in relation to any Person (other than an Individual), the possession, directly or indirectly, whether or not in conjunction with any other Person, of the power to direct or cause the direction of the management or policies of such Person, whether through the ownership of securities or other ownership interests, by contract or otherwise (it being understood that a person will be deemed to Control another Person if the first Person has the right to elect a majority of the board or equivalent governing body of such second Person); and a Change of Control occurs if a Person who Controls any Person (other than an individual) ceases to do so or if another person acquires Control of it.

\* \* \*

ITC Cellular LLC Agreement, Section 8.1(viii).

Debtors argue that Caucus Carry as the general partner of CaucusCom continues to control the limited partnership, including its management and policies. Thus, there has been no change of control of CaucusCom, no change of control of ITC Cellular under the recited clause (viii) of the definition of a change of control of ITC Cellular and, therefore, no change of control of ITC Cellular because of the termination of the CaucusCom partnership.

Shenton Park, on the other hand, argues that the clear meaning of the Partnership Act dictates that the Court find that CaucusCom expired on April 15, 2014, and therefore its general partner, Caucus Carry, lost its power to direct the management and policies of CaucusCom within the clear and undisputed meaning of subpart (viii) of ITC Cellular's change of control provision in the ITC Cellular LLC Agreement. According to Shenton Park, the power divested of Caucus Carry is now or should be in the hands of a liquidator.

The answer to the question of CaucusCom's existence comes directly from the Partnership Act, about which there is almost no case law. The Court's interpretation of the Partnership Act is greatly enhanced by the experts in the case. The experts are Paul Girolami QC ("Mr. Girolami") for Debtors and Arabella Luisa Di lorio ("Ms. Di lorio") for Shenton Park. Both experts testified at length in a clear and helpful manner befitting the Court's qualification of them as experts.

The tension in the Partnership Act arises over the applicability of Section 40(1) as against Sections 102 and 105. Section 40 reads as follows:

>  40. (1) Subject to subsection (2), after the dissolution of a partnership the authority of each partner to bind the firm, and the other rights and obligations of the partners, continue notwithstanding the dissolution so far as may be necessary to wind up the affairs of the partnership and to complete transactions begun but unfinished at the time of the dissolution, but not otherwise.
>
>  (2) The firm is in no case bound by the acts of a partner who has become bankrupt, but this exception does not affect the liability of any person who has after the bankruptcy represented himself or knowingly suffered himself to be represented as a partner of the bankrupt.

Section 102 provides, *inter alia*, that in the event of dissolution, "the general partners may only authorize a liquidator" to continue the business of the limited partnership. Section 105 provides for the actions required of general partners for winding-up the limited partnership, which includes filing a plan of dissolution and the actions of the Registrar in striking the limited partnership from the register and issuing a certificate of dissolution.

The dispute between Debtors and Shenton Park therefore settles on whether Section 40 is applicable to a limited partnership and in the circumstances presented. If it applies, the Court then has to determine whether the general partner, Caucus Carry, is winding up CaucusCom's affairs or if the facts suggest that it would be best were CaucusCom's affairs to be placed with a liquidator. The questions are not easy ones to answer but, of course, easy questions do not make their way to a contested matter.

### B. The Outcome

The Court begins its discussion of the affect of Section 40(1) – whether it even applies – with the only decision of which the Court is aware to discuss Section 40(1), *viz.*, *In the Matter of Hamilton Lane Private Equity Partners LP*, BVIHCV Com 96/2011. In that decision, the court had before it the application by the liquidator of Hamilton Lane

Private Equity Partners LP "for orders that the dissolution of the Partnership be rescinded and 'declared void'; that the Partnership be restored to the Register of Limited Partnerships (the "Register"); and/or for a declaration that the Partnership be deemed never to have been dissolved and struck off the Register." In *Hamilton Lane*, the partnership submitted the articles of dissolution, and the liquidator signed a statement to the Registrar that the winding up and dissolution were completed. The liquidator did not date the statement and left it with the partnership's registered agent, thinking that the registered agent would not submit the statement until the liquidator had, in fact, completed the winding up and dissolution. The liquidator was, however, not finished with the assignment and the registered agent nonetheless submitted the statement. The Financial Services Commission immediately issued a certificate of dissolution certifying that the partnership had been dissolved. The partnership was invested in private equity funds and companies, and dissolution would make the divestment of the assets and completion of the liquidation difficult if not impossible. The court ordered the Registrar to cancel the dissolution.

In reaching its decision, the court considered the Partnership Act and a number of its provisions. Germane to the present case, the court stated as follows:

> The procedure envisaged by section 105, once the general partners are required or propose to wind up and dissolve, is set out in the remaining paragraphs of subsection 105(1). The process is to be carried out by a liquidator (unlike the winding up of a partnership, which is carried out by the partners themselves, unless they are at odds, in which case the Court will appoint a receiver). **This would appear to mean that section 40(1) has no application to limited partnerships.** The winding up process is described in subsection 105(3) as dissolution. The term is clearly being used here in a different sense from that which it bears in Part V. In Part V (and,

9

> confusingly, in subsections 65(c) and 71(4) of Part VI) the term is used to describe the termination of the partnership relationship (subject to the ongoing relationship envisaged by section 40 for the sole purpose of winding up). In section 105 (which reverses the expression 'dissolution and winding up' so that it becomes 'winding up and dissolution') it is used to describe either the process of winding up (itself described in subsection 105(3) as 'dissolution'), or something which looks very much as though it was intended to incorporate the sort of dissolution which occurs upon the completion of the winding up of a limited liability company (subsections 105(5) and (6)).

*Hamilton Lane*, ¶ 21 at 9 (emphasis added). Earlier in the decision the court had stated:

> Sections 1 to 46 of the Act codify existing partnership law. Sections 47 to 109 deal with the new concept of limited partnerships and the remaining sections of the Act deal with the new concept of limited partnerships and the remaining sections of the Act deal with various miscellaneous matters. By subsection 47(3) those sections of the Act which codify existing partnership law apply to limited partnerships, but 'subject to' sections 47 and 108. I take this to mean that in the event of any conflict between a provision contained in any of sections 1 to 46 and the provisions dealing with limited partnerships, the latter provisions are to prevail, but otherwise limited partnerships are as much covered by sections 1 to 46 as are what might be called the traditional form of partnership (and which I am going to refer to in this judgment merely as partnerships).

*Hamilton Lane*, ¶ at 4.

The Debtors argued that the quoted language is dicta because it goes beyond what was necessary for the BVI court to reach its final result and render its ruling. The Court does not agree.

Dictum has been defined as "a statement in a judicial opinion that could have been deleted without seriously impairing the analytical foundations of the holding – that, being peripheral, may not have received the full and careful consideration of the court that uttered it." *Sarnoff v. Am. Home Prods. Corp.*, 798 F.2d 1075, 1084 (7th Cir. 1986). Dicta, therefore, is a statement which is unnecessary to a court's holding. The Court is satisfied

10

that the quoted language from *Hamilton Lane* is not dicta but, instead, essential to the holding. The *Hamilton Lane* court had before it a question involving a limited partnership's dissolution, and the court had to first decide what provisions of the Partnership Act applied to the facts of the case. The court therefore was compelled to analyze and discuss section 40(1) and came to the conclusion that it did not apply to the limited partnership. Even were the Court to find that the first quoted language from *Hamilton Lane* was dicta, the discussion by the BVI court is entitled to be considered by the Court and to "give such statements respect consistent with their persuasive value." *Galli v. New Jersey Meadowlands Comm'n*, 490 F.3d 265 (3d Cir. 2007). The *Hamilton Lane* opinion is of persuasive value to the Court, particularly in considering the structure of the Partnership Act. Section 40(1) appears in Part V. Sections 102 and 105 appear in Part VI entitled "Limited Partnerships." Section 47 (which is the first section of Part VI), states in its subsection (3) that: "Subject to sections 47 to 108, sections 1 to 46 shall apply to a limited partnership." Therefore, Section 40(1) is "subject" in the event of a conflict to Sections 47 to 108 and is therefore "subject" to Sections 102 and 105 which provide for the appointment of a liquidator following expiration of the term of the partnership, i.e., April 15, 2014.

Mr. Girolami, whose presentation[2] was most impressive, relies heavily on Section 40(1) for the point that the powers of the partners continue after the expiration of the partnership. He testified that reading the Partnership Act as a whole, Section 40(1)

---

[2] The experts were not sworn and spoke from the podium rather than the witness stand. The Court nonetheless is treating their discussions as expert testimony.

11

provides that after termination of a limited partnership, the general partner has the power to continue the partnership business and complete transactions. Mr. Girolami disagreed that *Hamilton Lane* stands for the point that Section 40(1) does not apply to limited partnerships. Such language in *Hamilton Lane* is dicta according to Mr. Girolami.

On the other side of the argument, Ms. Di Iorio testified with authority that *Hamilton Lane's* language is not dicta and that the CaucusCom partnership dissolved on April 15, 2014. According to Ms. Di Iorio's view, upon CaucusCom's termination it became necessary to look at Sections 102 and 105 for further proceedings. Thus, in her Expert Report, dated November 4, 2015, Ms. Di Iorio opined that:

> [T]he general partner no longer has any control over the partnership, its management or business: the partnership is in wind down, it is moribund, it is in the hands of the liquidator until a dissolution certificate is issued and it ceases to exist. The general partner's powers to direct the affairs of the partnership cease, and the general partner must simply carry out the administrative functions and regulatory obligations set out in the articles and the 1996 Act. The general partner no longer has the power to direct or cause the direction of the management of the partnership. The liquidator assumes control of the business, again (unless authorized otherwise) simply for the purposes of winding up and dissolution.

The Court having found that *Hamilton Lane* does hold that Section 40(1) does not apply to limited partnerships, and having found that Sections 102 and 105 do apply, the outcome is clear. The expiration of CaucusCom some twenty months ago does result in the change of control of ITC Cellular. Caucus Carry, the general partner of CaucusCom, is required by Section 102 to act as that Section mandates and appoint a liquidator and act in accordance with Section 105. As is compelled by the ITC Cellular LLC Agreement, Caucus Carry's loss of management control results in an ITC Cellular change of control.

CaucusCom's Articles of Limited Partnership provide for termination. The termination articles provide that CaucusCom shall terminate on the fourth anniversary of the date of the Articles, subject to extension "in order to carry out the orderly liquidation of the Partnership's shareholding in [Magticom]." The Articles are dated June 21, 2007, which means that with the two one year extensions at Caucus Carry's discretion the Partnership expired by its terms on June 21, 2013 – although the limited partners by agreement extended the term to April 15, 2014. Stipulated Facts, ¶ 13. Article 10.2 of the Articles provides:

> Upon termination of the Partnership, no further business shall be conducted except for such action as shall be necessary for the winding-up of the affairs of the Partnership and the distribution of the Partnership Assets amongst the Partners. . . .

The Articles therefore clearly mandate winding-up of the partnership upon its termination and specifically make reference to the "orderly liquidation of the Partnership's shareholding in [Magticom]." Caucus Carry as general partner has been aware of the termination for 20 months, ample time to make arrangements for the wind-up of the Partnership's affairs.

In his presentation, Mr. Girolami pointed out that Sections 10.3 – 10.6 of the Articles refer to wind up actions of "the General Partner (or the Liquidator)" as proof that the Court should give Caucus Carry the opportunity to handle the winding-up of the Partnership. Here, however, where Shenton Park as a limited partner is insisting on the appointment of a liquidator and it has been 20 months since the termination date, it only makes sense that a liquidator manage the winding-up of the Partnership's affairs.

## CONCLUSION

The Partnership Act and *Hamilton Lane* make clear that Section 40 is subject to Sections 47 through 108 which come under the heading "Limited Partnerships." It is in fact clear from the Partnership Act, as well as *Hamilton Lane* and the testimony of Ms. Di Iorio, that Caucus Carry lost its power and authority upon the dissolution of CaucusCom. What remains for Caucus Carry as general partner is, under Sections 102 and 105, to name the liquidator and "authorize a liquidator . . . to carry on the business of the limited partnership if the liquidator determines that to do so would be necessary or in the best interests of the limited partnership or its creditors." Partnership Act, Section 102(a). What is also clear to the Court is that because Caucus Carry ceases "to direct or cause the direction of the management or policies "of CaucusCom, there is an "ITC Cellular Change of Control" with its ramifications. ITC Cellular LLC Agreement, Section 8.1 (viii). In addition, it appears that Caucus Carry "ceasing to be the general partner of CaucusCom Ventures" is another basis for the ITC Cellular change of control. ITC Cellular LLC Agreement, Section 8.1(ii).

For the reasons provided, the Court finds that an ITC Cellular Change of Control has occurred by virtue of the dissolution of CaucusCom. Shenton Park is directed to submit an Order on notice to Debtors.

Dated: December 16, 2015

/s/ Kevin Gross
KEVIN GROSS, U.S.B.J.